# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

01 SEP 21 PM 3: 40

U.S. OF ALABAMA

GARY A. WARREN,  )
      Plaintiff,  )
        )
vs.  )     CV-99-BU-0773-M
        )
CHIEF JONNY GRANT, et.al.,  )
      Defendants.  )

**ENTERED**

SEP 21 2001

## MEMORANDUM OF OPINION

This is a civil action pursuant to 42 U.S.C. §1983 in which the plaintiff, Gary A. Warren, alleges that his constitutional rights were violated while he was incarcerated at the Etowah County Detention Center in Gadsden, Alabama. In his *pro se* complaint, Plaintiff names as Defendants Chief Jonny Grant, Assistant Chief Williams (or Williamson), Phillip McDuffy, Adam Bryant, Bryant Carroll, Sheriff James Hayes and Captain Gerald and alleges that these Defendants violated his First, Fifth, Sixth, and Fourteenth Amendment rights.[1] As compensation for the alleged constitutional violations, Plaintiff seeks money damages.

The Magistrate Judge entered an Order for Special Report (Document #6) directing that copies of the complaint in this action be forwarded to Defendants

---

[1] In his complaint, Plaintiff also named the Etowah County Detention Center, "Does-100," and the City of Gadsden as Defendants. In a Report and Recommendation entered February 16, 2000, the Magistrate Judge recommended the dismissal of all claims against the Etowah County Detention Center, "Does-100," and the City of Gadsden. By order entered March 10,2000, the Court adopted the Magistrate Judge's recommendation, dismissing all claims against the Etowah County Detention Center, "Does-100," and the City of Gadsden.

39

Grant, Williams (or Williamson), McDuffy, Bryant, Carroll, Hayes and Gerald,[2] requesting that they file a special report addressing the factual allegations of the plaintiff's complaints.  The defendants were advised that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, would be considered as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.  By the same Order, Plaintiff was advised that, after he received a copy of the special report submitted by Defendants, he should file counter affidavits if he wished to rebut the matters presented by Defendants in the special report.  Plaintiff was further advised that such affidavits should be filed within twenty days after receiving a copy of the Defendants' special report. Plaintiff filed a response  (Document #10) to the Order for Special Report.

Defendants filed a special report (Document #20) accompanied by their affidavits and pertinent documents.  Plaintiff was thereafter notified  that he would have twenty days to respond to the motion for summary judgment, filing affidavits or other material if he chose.  Plaintiff was advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56.  *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).  Plaintiff  filed a response (Document #24).

---

[2]In the special report (Document #20) some Defendants corrected their names and titles as follows:  Chief Investigator Johnny Grant; Chief of Corrections Wes Williamson; Sergeant Theresa Johnson; Brian Carroll; and Randy Jarrells.

## SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the Court must determine whether the moving party is entitled to judgment as a matter of law.  Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  In making that assessment, the Court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).  Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989).  Unless Plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (citation omitted).   However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment.   *See Perry v. Thompson*, 786 F.2d 1093 (11th Cir. 1986).

## FACTUAL ALLEGATIONS

### *Plaintiff's Complaint*

Plaintiff was incarcerated in the Etowah County Detention Center in Gadsden, Alabama in 1998.   Complaint (Document #1) at 3.   In  May and June of 1998, "plaintiff filed several grievances and requests to Chief Jo[h]nny Grant and other employees . . . [regarding] problems and violations" occurring at the detention center during 1998.   *Id.* at 3 and 5.   During the month of May, Plaintiff alleges that Chief Johnny Grant responded to "plaintiff's grievances in person and through other employees by stating: 'If you (the plaintiff) keep filing grievances or if you file another grievance form I am  going to lock you in segregation or in your cell for twenty-three (23) hours a day.'" *Id.*    On or about June 10 or June 18, 1998, plaintiff filed a petition addressed to Chief Johnny Grant complaining about:

> "illegal immigration problems occuring (sic) and housed in the same housing unit as plaintiff and other inmates in Unit #5 as to violations in [the] grievance forms, referring to; lack [of ability] to consult with ones (sic) attorney, unequal and illegal treatment, unequal time periods, retaliation, due process violations, lack of showering, lack of clean clothes, lack of issuing personal hygiene and other items . . . denied access to redress...right to right petition for redress of grievances, denied redress and access to law library to petition the Government by Ms. Johnson . . . ."[3] *Id.*

Although Plaintiff had violated no "State, Federal or local rules of the Etowah County Jail", on June 23, 1998, he was placed in "seven (7) day (twenty-three (23) hours a day) lock down" without being afforded a due process hearing in contravention of his First and Fourteenth Amendment rights. *Id.*   On July 22, 1998, Plaintiff was again placed in lock-down for seven (7) days by Defendant Brian Carroll without first being afforded a disciplinary hearing because Carroll decided to "harass . . . and retaliate . . . [against the plaintiff] for filing or exercising plaintiff's First, Fifth, Sixth, and Fourteenth Amendment . . . rights to petition the Government for redress of, and to file grievances [against] . . . jail officials Phillip McDuffy, Adam Bryant, Br[ian] Carroll and other Etowah County Jail officials [who] violated the . . . rights . . . of the plaintiff over and over again." *Id.* Further, Defendant Brian Carroll ordered Plaintiff "to move across the hall to Unit #4" and Brian Carroll and Phillip McDuffy made "threats as to what they . . . would do to plaintiff if plaintiff didn't move to another

---

[3]Plaintiff asserts these violations occurred "before, during and after" his seven (7) day stint in lock-down.

Unit at the Etowah County Jail." *Id.* at 7. Plaintiff contends that thereafter, "Carroll began a series of harassment, retaliation . . . [and] equal protection violations." *Id.*

On July 24, 1998, Plaintiff states that Defendant Brian Carroll intentionally denied him "the right to free exercise and fresh air . . . for the one (1) hour per day free exercise period requirement" because Plaintiff had exercised his right to file grievances. *Id.* at 7-8. On July 25, 1998, Plaintiff served Brian Carroll with a grievance for his actions taken against Plaintiff with regard to lock-down and for refusing to allow Plaintiff to exercise. In response, Defendant Carroll "again den[ied] plaintiff the one (1) hour free exercise period and fresh air rights . . . ." *Id.* at 8. On the same day, Defendant Carroll punished Plaintiff for talking when Plaintiff had been told not to talk, an action which Plaintiff asserts also violated his right to free speech. *Id.* Finally, Plaintiff alleges that on July 29, 1998, he "was transferred to another Unit in retaliation for exercising his constitutional rights, by said jail officials in this said complaint." *Id.* at 9.

### *Defendant's Special Report*

Defendants generally deny each and every allegation in Plaintiff's complaint, argue that Plaintiff failed to exhaust administrative remedies available to him, and assert the affirmative defense of immunity. (Document #20, at 2 and 13-14).

Defendants initially propose that the Etowah County Jail executes the following procedures and policies: (1) that safety and control of the jail is the

responsibility of the staff;[4] (2) that daily records of the activities of the jail shall be kept;[5] (3) that all inmates will receive an "Inmate Guidebook" upon entry to the jail that sets out, among many things, disciplinary procedure and grievance processes;[6] (4) that there will be no disciplinary action taken without due process;[7] (5) that for major or serious violations, the inmate will be granted a hearing upon request as the inmate faced disciplinary segregation;[8] (6) that for minor violations, a corrections officer could choose to reprimand the inmate or place him in administrative segregation;[9] and (7) that there will be no retaliation taken against inmates for filing grievances. *Id.* at 2-6.

Due to overcrowded conditions in the Jefferson County Jail, Plaintiff and twenty four (24) other inmates were transferred to Etowah County Jail on May 20, 1998. *Id.* at 6. All of the transferred inmates, including Plaintiff, were considered

---

[4]*See* "Etowah County Jail Policies and Procedures-Inmate Supervision and Relations" (Exhibit 1 to Document #20).

[5]*See* "Jail Logs from July 1, 1998--July 29, 1998" (Exhibits 5 and 6 to Document #20). The Court notes that Defendants have presented no logs from May or June 1998.

[6]*See* "Etowah County Jail Policies and Procedures – Inmate Disciplinary Procedures" (Exhibit 3 to Document #20).

[7]*Id.*

[8]*Id.*

[9]The policies and procedure for minor violations are noticeably absent with the exception of Section XX of the "Sanctions for Misconduct" portion of the Inmate Handbook, which states the maximum punishment for  minor violations without formal proceedings is the  withholding of POD privileges by the POD officer.  Further, recreation and smoking privileges may be withheld.  (Exhibit 2 to Document #20) at 15.

"U.S. Marshal inmates," given a "general population" classification, and placed in Unit 5 of the jail. *Id.* at 7. On July 22, 1998, Plaintiff was moved to Unit 4, and remained there until his transfer to Talladega F.C.I. on July 29, 1998. *Id.* at 6, 10 and Exhibit 10.

Defendants contend that while at Etowah County Jail, former Jefferson County inmates, including Plaintiff, verbally expressed "dissatisfaction with their transfer due to" visitation problems with their families.[10] However, except for Defendant Pentecost, (who failed to make any response regarding her knowledge of the grievances filed by Plaintiff), all Defendants deny that they received, possessed, or had knowledge of any grievances filed by Plaintiff regarding the conditions at the Jail.[11] They do however, recollect that Plaintiff requested legal materials on June 7, June 15, and June 24, 1998.[12]

Defendants assert that Plaintiff and the other transfer inmates from Jefferson County Jail :

> presented continuing problems to members of the detention center
> staff due to their dissatisfaction with the place of their incarceration.

---

[10]*Id.* at 6 and 7. Investigator Johnny Grant does recall that Plaintiff "complained about, and seemed dissatisfied with his incarceration at Etowah County. Grant Affidavit, at 2.

[11]The following referenced affidavits (as to each Defendant) are derived from Document #20. They are: Williamson, at p.6; Grant, at p.2; Carroll, at p. 2-3; Hayes, at p.2; Jarrells, at 1-2; Johnson, at 1-2; and Bryant, at 1-2.

[12]*Id. See also* (Exhibit 12 to Document #20). Said Exhibit consists of written requests for legal materials by Plaintiff on 6/7/98, 6/15/98 and 6/24/99.

These problems, while not causing disciplinary action to be taken against them, did lead Sheriff James Hayes, Chief Johnny Grant and [Assistant Chief Wes Williamson] to visit with and counsel the inmates incarcerated in Unit 5 of the detention facility on June 28, 1998. For the ten days following this visit, until July 2, 1998, all inmates in Unit 5 were restricted to their cells for twenty-three hours per day. This measure was taken by the Sheriff   in order to prevent additional disruptions in the operation of the detention center, and to emphasize to the inmates housed there, all of whom had taken part in the disruptive behavior, that detention center rules would be followed.[13]

Defendant Carroll admits that on July 22, 1998, he "was on housing duty in Unit 5, where the plaintiff was incarcerated." Carroll Affidavit, (Document #20) at 1. Carroll states that twice he observed Plaintiff with his shirttail out of his uniform pants. *Id.* at 1-2. The first time Carroll saw Plaintiff's shirttail, he instructed Plaintiff to tuck his shirt into his pants. *Id.* at 1; see also an incident report concerning same. (Exhibit 7). Later that day, he again noticed that Plaintiff's shirttail was out of his pants. *Id.* at 1. This time, Carroll informed Plaintiff that "he would be on 24-hour lockdown because of his failure to follow both detention center rules and the direct order of an officer."[14] "Acting on orders from Captain Randy Jarrells,[15] [Carroll] attempted to transfer inmate Warren from Housing Unit 5 to Housing Unit 4. Mr. Warren first refused to leave his cell, and threatened to harm me if I came into his

---

[13]Williamson Affidavit, at 5. The affidavits of Sheriff Hayes and Chief Johnny Grant contain exactly the same explanation as Defendant Williamson. Hayes, p. 1-2 and Grant, p.1-2.

[14]*Id.* at 2. Article VII of the Inmate Guide governs "Personal Appearance and Hygiene". (Exhibit 2 to Document #20) at 4-5. There is no written regulation mandating that an inmate tuck his  shirttail in his pants. *Id.*

[15]Defendant Jarrells was the detention center disciplinary officer at the time of Plaintiff's incarceration. Jarrells Affidavit (Document #20) at 2.

cell." *Id.*; see also report concerning same. (Exhibit 8). Apparently, Defendant Randy Jarrells then entered Plaintiff's cell and transferred him to Unit 4 where Plaintiff was to remain for "24 hours in lockdown status due to his attitude problem."[16]

Although Defendants declare that Plaintiff was to remain in lockdown for only 24 hours, they do not deny that Plaintiff remained in lockdown until July 29, 1999. In their special report Defendants state that during this period of time Plaintiff "was allowed outside his cell for one hour per day, usually in two thirty-minute periods." (Document #20) at 9.  Jarrells asserts that  "on July 25, 1998, during the period when inmate Warren was outside his cell, he again threatened me, this time stating, among other things, that he would get my job taken from me."  Jarrells Affidavit, (Document #20) at 2.  Jarrell asserts that he told inmate Warren repeatedly to keep his comments to himself, but he refused to do so, and therefore, "Jarrells reported [his] activity for possible disciplinary action . . . "in an incident report. *Id.*; see report concerning same. (Exhibit 9).

With regard to detention center rules, Defendants' special report reads:

> The Etowah County Sheriff's Department classifies violations of detention center rules into three categories: minor, major, and serious.

---

[16]Jarrells Affidavit, (Document #20) at 1.  In their special report, Defendants insist that the 24 hour lockdown was "administrative", not punitive, and argue that Plaintiff was placed in 24 hour lockdown because of his threat to Defendant Carroll. (Document #20, at 9). This assertion is not supported by the affidavits of Jarrells or Carroll, who state Plaintiff was placed in lockdown because he would not tuck his shirttail in as allegedly required by the jail regulations after being ordered to do so by Carroll.

Major or serious violations call for the immediate lockdown of an inmate, and the preparation of an incident report. Thereafter, investigations of the incident may take place, the inmate is notified of the charges, a hearing may be held, and if appropriate, disciplinary action may be taken.

. . .

It is the policy of the Etowah County Sheriff's Department that, when an officer observes or deals with a minor violation, he or she be given the option to verbally reprimand an inmate, informing the inmate that continued violations of rules may result in a loss of privileges, or to inform the inmate of the nature of his or her rule violation, and emphasize that repeated minor violations can be classified as a major violation. Under either circumstance, the officer may, in addition to the above, order an inmate to his or her cell for a period of lockdown in order to maintain the safety and security of the facility. Such lockdown is considered to be administrative in nature, rather than disciplinary.

*Id.* at 4.

Defendants' interpretation of classification, detention center rules, procedural due process requirements and sanctions does not comport with The Inmate Guide Book or the Etowah County Jail's policy concerning due process procedures. The table below sets out the actual language of the  The Inmate Guide Book[17] to the extent that same are applicable to the facts of the present action. It appears to the court that most, if not all, of Plaintiff's disciplinary violations were major violations for which due process hearings[18] were required according to the Jail's own rules.

---

[17](Exhibit 2 to Document #20).  The Court would note that the table below also encompasses Defendants' version of the facts compared to the plain language of the  Guide Book.

[18](Exhibit 3 to Document #20).

| **MINOR** | **MAJOR** |
|---|---|
| Minor violations shall include acts which do not constitute a present or immediate threat to the security of the facility, its staff, inmates, visitors, or the inmate who committed the violation. Exhibit 2, Document #20, at 11. | Major violations shall include persistent minor rule infractions, cases where a determination is made that the remedy for a minor violation serves no deterrent effect, and rules violations that cannot be considered minor, but which do not constitute a present and immediate threat to the security of the facility, its staff, inmates, visitors, or the inmate who committed the violation. Exhibit 2, Document #20, at 11. |

| **Alleged Actions of Plaintiff / Minor** | **Alleged Actions of Plaintiff / Major** |
|---|---|
| None. *Id.* at 12. | B.  Repeated commission of minor violations within a reasonable length of time after the issuance of an appropriate warning. |
| | C.  Failure to comply with a lawful order of any staff member. |
| | D.  Threatening another with bodily harm or with any offense against personal property. |
| | P.  Willful conduct which disrupts security, religious, medical or food services or any other facility activity or program or interferes with the orderly operation of the facility.  *Id.* at 12-13. |

| **Maximum Sanctions for Minor Violations** | **Maximum Sanctions for Major Violations** |
|---|---|
| 1. Verbally reprimand the inmate offender and inform him that continued violation of the rule may result in the loss of privileges. The officer may order the inmate to their cell at any time.<br><br>2. Inform the inmate offender of his wrong doings and inform the inmate that repeated minor violations will be classified as major violations.<br><br>3. POD privileges . . . may be withheld by the POD officer  without formal proceedings. *Id.* at 11. | B.  One major rule violation; loss of visitation not to exceed 30 days, segregation not to exceed 30 days, and criminal prosecution.<br><br>C.  Two or more major violations; loss of visitation not to exceed 90 days, segregation not to exceed 30 days (must be reviewed by the Chief of Corrections every 30 days) loss of store call, phone privileges not to exceed 30 days, and criminal prosecution.... *Id.* at  15. |

| **Procedure as per Jail Policy/Minor Violations** | **Procedure as per Jail Policy/Major Violations** |
|---|---|
| 1. Verbally reprimand the inmate offender and inform him that continued violation of the rule may result in the loss of privileges. The officer may order the inmate to their cell at any time.<br><br>2. Inform the inmate offender of his wrong doings and inform the inmate that repeated minor violations will be classified as major violations.<br><br>3. POD privileges may be withheld by the POD Officer for minor violations without formal proceedings. *Id.* at 11. | If the violation appears to major or serious in nature, the officer shall lock the inmate down and make a report of the rule violation, and prepare a copy of the report to the Disciplinary Officer. In this case the Shift Commander may  decide to move the inmate to a more secure part of the jail.<br><br>The Disciplinary Officer is authorized to conduct investigations and hearings, make findings of fact, impose disciplinary sanctions, recommend or initiate disciplinary program changes and take any other actions to ensure decision effectiveness.<br><br>Any inmate charged with a major or serious violation is entitled to a hearing before the Disciplinary Officer, but may waive such hearings. Upon waiving his right to a hearing, the Disciplinary Officer will assess the penalty for the rule violation. Inmates may appeal the decision of the Disciplinary Officer to the Chief of Corrections whose decision  is final. *Id.* at 11.<br><br>Inmate Disciplinary Procedure<br><br>Etowah County Jail's policy regarding Inmate Disciplinary Procedures shall be in accordance with due process established in *Wolff v. McDonnell.* 418 U.S. 539 (1974). (Exhibit 3 to Document #20). |

### *Plaintiff's Response*[19]

In his response, Plaintiff moves to clarify  his complaint, stating his case involves issues of "Civil Rights under the First, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States." (Document #35) at 1.  As the factual basis for same, he complains Defendants denied his right to free speech by retaliating against him for filing grievances about prison conditions in the form of placing him in lockdown for a total of seventeen (17) days.  *Id.* at 1-2.

Plaintiff asserted in his complaint that he had filed several grievances in May, 1998, and that he personally served another grievance upon Defendant Carroll on July 25, 1998, although he has provided no documentary evidence of same. Plaintiff also  presents three (3) documents in support of his assertion that he filed grievances about the jail of which Defendants were aware.  All documents bear the signature of Defendant Theresa A. Johnson, acting as a notary public.  *Id.* at 2.

The first document was signed by 69 inmates[20] on June 10, 1998, and is entitled "Petition to Chief Grant and the Etowah County Jail."  (Exhibit A to Document #35).  The petition complains that Etowah County Jail shows deference to "foreigners" with regard to visitation, telephone, and smoking privileges.  It further

---

[19]  Although Plaintiff filed a pro-se response to Defendants' special report, he also retained legal counsel to represent him. Mr Aubrey Harper, Plaintiff's Tennessee attorney, also filed a response to Defendants' special report. As such, this Court will only consider the responsive pleading filed by Mr. Harper.

[20]Also known as "The people of Unit 5." *Id.* at 3

complains that Unit 5 does not have adequate shower time, which is causing hygiene problems.

The second document was signed only by Plaintiff on July 27, 1998, and is entitled "Confidential Memorandum of Criminal Complaint." (Exhibit D to Document #35). It was apparently filed in the Circuit Court of Etowah County, Alabama. *Id.* In the complaint, Plaintiff alleges that Defendant Carroll committed "criminal, unprofessional, inap[p]ropriate . . . misconduct" against Plaintiff by retaliating against him in the form of being "moved around" and by Carroll "lying . . . filing false reports . . . disciplinary action . . . [with the aide of Defendant] Phillips." *Id.* at 1-2.

The final document was signed only by Plaintiff on July 27, 1998, and is entitled "Confidential Memorandum of Civil Complaint." (Exhibit H to Document #35). It was apparently filed in the United States District Court for the Northern District of Alabama, Southern Division. *Id.* He reiterates his allegations of retaliation by Defendants Bryant and Carroll. Thereafter, Plaintiff argues that he was transferred from Etowah County Jail on July 29, 1998 as a result of the exercise of his First Amendment rights. *Id.* at 4.

Also secured to Plaintiff's response is an affidavit from another inmate, Mr. Imari Mackey, who was also housed in Unit 5 of the Etowah County Jail during June, 1998. Mackey Affidavit, (Document #35). Mr Mackey attests that he was aware that Plaintiff filed several grievances concerning jail conditions. Further, Chief Johnny Grant and "others" entered Unit 5, "gathered everyone from their

rooms and made a speech stating: 'If you file another grievance or request form we are going to lock everyone in this Unit in your room for two weeks, twenty-three (23) hours a day.' [Mackey] observed afterward that a petition was filed by Gary Warren, and it was signed by nearly all the people in Unit #5 and turned into Chief Grant. The next day or so, Chief Jonny Grant, Sheriff James Hayes, Captain Gerald, Ms. Theresa A Johnson, Assistant Chief Williamson and others entered Unit #5 holding this (sic) hands the [p]etition that Gary Warren had filed and stated out very loudly: 'Didn't I tell you all that I would lock everyone in the cell for a week or more if you file another grievance? Everyone, go to your cell now!!!' Then everyone was locked in their cell for more than a week. I was one of the inmates in that group." *Id.*

## **FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

### *Summary of Grievance Procedure and Plaintiff's factual allegations*

Section XXI of 'The Inmate Handbook" sets out the proper procedure for filing inmate grievances.  It is as follows:

> If you feel you have a grievance or complaint about anyone or any situation associated with the jail you may request a grievance form from any Corrections Officer.  Generally grievances should be submitted to the Chief of Corrections. You may, however, submit your complaint directly to the Grievance Coordinator if you feel the subject matter or the seriousness of the matter requires it.  You may also go to the Grievance Coordinator if you are not satisfied with the Chief of Corrections response to your complaint.  Grievance forms will be forwarded to the appropriate person without delay.  And responses will be made within three working days except for emergencies which will be responded to as soon as possible.

Grievances must be submitted within 48 hours of the incident to be considered.

**THE SUCCESS OR FAILURE OF OUR INTERNAL GRIEVANCE PROCEDURE SOLELY DEPENDS ON YOU FOLLOWING THE GRIEVANCE PROCEDURES LISTED IN THE INMATE HANDBOOK. ANY GRIEVANCES OR COMPLAINTS SENT TO PARTIES OTHER THAN THE CHIEF OF THE JAIL OR THE GRIEVANCE COORDINATOR ARE NOT GUARANTEED TO BE ANSWERED. THE SHERIFF OF ETOWAH COUNTY IS NOT A PART OF THE GRIEVANCE PROCEDURE, AND HE WILL NOT RESPOND TO GRIEVANCES OR MAILED COMPLAINTS.**

(Exhibit 2 to Document #20) at 15-16 (emphasis in original).

The July 25, 1998 grievance that Plaintiff handed to Defendant Carroll, as well as his July 27, 1998 criminal and civil retaliation complaints filed in the Circuit Court of Etowah County, were not in accordance with the Inmate Handbook Grievance Procedure. Further, while his May, 1998 grievance forms may have been filed in the appropriate manner there is no evidence that Plaintiff submitted the claims to the Grievance Coordinator after receiving such an adverse response from Chief Grant. Finally, although Plaintiff's June 10, 1998 petition was appropriately submitted to Chief of Corrections Johnny Grant, it was not written on a jail grievance form, it does not denote whether or not the alleged constitutional violations occurred within 48 hours of the filing of the petition, and Plaintiff did not take the petition to the Grievance Coordinator.

## *Preamble*

Defendants contend that Title 42, Section 1997e(a) of the  United States Code (the Prison Litigation Reform Act and hereinafter "PLRA") requires a prisoner to exhaust all available administrative remedies prior to bringing a civil action in federal court.  Special Report, (Document #20, at 14).  Specifically, they contend said section mandates that "'[no] action shall be brought with respect to prison conditions under §1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'" *Id.*(quoting 42 U.S.C. § 1997e(a)).

Plaintiff's response to this assertion is twofold.  First, he argues that his retaliation claims for the exercise of his First Amendment rights do not constitute "prison conditions" as defined by  42 U.S.C. § 1997e(a).  Plaintiff's Response (Document # 35, at 4).  As such, he is not required to perfect any administrative remedies that may be available prior to filing a § 1983 action in federal court.  Second,  Plaintiff states that he tried to utilize the jail grievance procedure to "address prison conditions such as phone, visitation and shower privileges as well as false disciplinary action taken against him administratively, but his complaint was ignored . . . ," suggesting that he has indeed exhausted any administrative remedies available to him with regard to these issues. *Id.*

After carefully considering the opposing parties' positions, there appear to be two (2) questions that must be answered by the Court in order to determine whether

or not summary judgment should be granted or denied in this matter: (1) whether Plaintiff's claim that he suffered retaliation for exercising his First Amendment rights is actually a complaint about "prison conditions" as defined in 42 U.S.C. § 1997e(a); and (2) whether Plaintiff properly exhausted the administrative remedies available to him with regard to his remaining complaints about the aforementioned jail conditions, due process, and equal protection.

## Discussion

When viewing § 1983 claims, the Eleventh Circuit Court of Appeals has strictly applied the mandatory exhaustion of administrative remedies requirement in § 1997e(a). *Alexander v. Hawk*, 159 F.3d 1321, 1323 (1998). This application is rooted in the Supreme Court's instruction that "[w]here Congress specifically mandates, exhaustion is required." *Id.* at 1325 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144, 112 S. Ct.1081, 1086, 117 L. Ed. 2d 291 (1992). Further, the Eleventh Circuit Court of Appeals has decided that "the term 'available' in section 1997e(a) is [simply] used to acknowledge that not all prisons have administrative remedy programs," not that a court must gauge the merits of the remedies, if provided . *Id.* at 1326. As such, an inmate must exhaust his administrative remedies even if the relief provided by the grievance procedure or the grievance procedure itself is inadequate and futile. *Id.* ("1997e(a) merely provides for such 'administrative remedies as are available,'" thereby allowing the court to focus only

Page 18 of 21

on the existence of an administrative remedy and preventing the court to determine whether such remedies are adequate or effective.). This requirement relies upon the Supreme Court's finding that "where exhaustion is a statutorily specified jurisdictional prerequisite, 'the requirement . . . may not be dispensed with merely by a judicial conclusion of futility.'" *Id.* (citing *Weinberger v. Salfi*, 422 U.S. 749, 766, 95 S. Ct. 2457, 2467, 45 L. Ed. 2d 522 (1975)). The following circuits side with *Alexander*: (1) the Seventh Circuit,[21] (2) the Third Circuit,[22] (3) the Sixth Circuit,[23] and (4) the Fifth Circuit.[24]

Plaintiff's retaliation claims for the exercise of his First Amendment rights are subject to the mandatory exhaustion of remedies requirement set out in § 1997e(a). Plaintiff failed to file any grievances with regard to these claims in accordance with written jail procedure. Therefore, Plaintiff failed to exhaust available administrative remedies and his retaliation claims are due to be dismissed with prejudice.

The next question becomes whether or not Plaintiff exhausted the administrative remedies concerning his May 1998 grievances; his June 10, 1998 petition regarding "foreigners" receiving preferential treatment in telephone,

---

[21]*Johnson v. Litscher*, 2001 WL 9151276, 1-2 (7th Cir. 2001) wherein an inmate's allegations of retaliatory transfer for the exercise of his first amendment rights were dismissed without prejudice for failure to exhaust administrative remedies. *See also, Perez v. Wisconsin Department of Corrections*, 182 F.3d 532, 535, 537 (7th Cir. 1999).

[22]*Nyhuis v. Reno*, 204 F.3d 65 (3rd Cir. 2000).

[23]*Wyatt v. Leonard*, 193 F.3d 876 (6th Cir. 1999).

[24]*Underwood v. Wilson*, 151 F.3d 292 (5th Cir. 1999).

visitation and shower privileges; and the grievance he served upon defendant Carroll on July 25, 1998. Plaintiff's May, 1998 grievances might have initially comported with Jail Procedure, but he did not "appeal" Chief Grant's unsatisfactory response to the Grievance Coordinator as required. Further, while Plaintiff sent his June 10, 1998 petition to the Chief of Corrections, there are no dates that would show that these perceived constitutional violations occurred within the preceding 48 hours; also, the petition was not submitted on a formal grievance form available at the Jail. Plaintiff filed his grievance against Defendant Carroll within 48 hours; however, he did not submit the grievance to the Chief of Corrections. More importantly, Plaintiff did not follow any of these grievances to fruition. The policy states that if Plaintiff was unhappy with the decision of the Chief of Corrections, he could present his claim to the Grievance Coordinator. Plaintiff did not do so, and the failure to follow the grievance procedure to its conclusion with regard to each of the preceding complaints prevents him from pursuing a federal lawsuit at this time. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). Therefore, Plaintiff's remaining claims are due to be dismissed.

A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this the 21ST day of September , 2001.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE